# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Stephen Gregorski, | : |
| | : |
| Petitioner | : |
| | : |
| v. | : No. 370 C.D. 2016 |
| | : Submitted: August 26, 2016 |
| Workers' Compensation Appeal | : |
| Board (Self-Insurance Guaranty | : |
| Fund as Successor to The Great | : |
| Atlantic and Pacific Tea Company), | : |
| | : |
| Respondent | : |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                    **FILED:  January 5, 2017**

Stephen Gregorski (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) affirming the decision and order of a Workers' Compensation Judge (WCJ) that denied a termination petition filed by Claimant's former employer, The Great Atlantic and Pacific Tea Company, d/b/a Super Fresh Food Markets (Employer), and denied Claimant's request for unreasonable contest attorneys' fees.  In this appeal, Claimant appeals the denial of his request for unreasonable contest attorneys' fees and challenges Finding of Fact No. 10 of the WCJ's decision, which served as a basis for the WCJ's conclusion that the termination petition was a reasonable contest.  For the reasons stated

below, we hold that Finding of Fact No. 10 is legally invalid, but affirm the denial of Claimant's request for attorneys' fees because attorneys' fees are barred as a matter of law in this case.

On November 11, 1985, Claimant sustained an injury while employed at one of Employer's grocery stores. (5/7/15 WCJ Decision at 1.) Employer issued a Notice of Compensation Payable (NCP) on January 7, 1986 recognizing Claimant's injury as work-related and describing the injury as "moving pallet of eggs, pulled neck." (*Id.*; Exhibit J-2, NCP.) Claimant began receiving wage-loss benefits on November 19, 1985 at the rate of $306.53 based on a weekly average wage of $459.80. (5/7/15 WCJ Decision at 1; Exhibit J-2, NCP.)

In 2001, Employer filed a modification petition alleging that offers had been made to Claimant of light-duty employment that Claimant had failed to accept. On March 27, 2003, WCJ Aida Harris issued a decision denying the modification petition, concluding that Claimant had not recovered from his work injury and he would not be able to perform any of the jobs offered to him. (3/27/03 WCJ Decision Findings of Fact (F.F.) ¶¶6-8, Conclusions of Law (C.L.) ¶¶2-3, Reproduced Record (R.R.) 9a-10a.) In this decision, WCJ Harris relied on the testimony of Vincent L. Ferrara, M.D., a neurosurgeon who has treated Claimant since 1999 and performed cervical fusion surgeries on Claimant's neck in 1999 and 2002 and who opined that Claimant's neck condition and surgery would not allow him to perform the offered jobs. (*Id.* F.F. ¶¶5-6, R.R. 7a-10a.)

In 2012, Claimant filed a penalty petition against Employer, which was assigned to WCJ Holly San Angelo. During the proceedings on the penalty petition, Claimant and Employer requested that the penalty petition be amended to a petition to request approval of a Compromise and Release Agreement (C&R

2

Agreement). (12/23/13 WCJ Decision F.F. ¶1, R.R. 14a.) On December 23, 2013, WCJ San Angelo issued a decision approving the C&R Agreement, and finding that Claimant fully understood the legal significance of and voluntarily entered into the agreement and that the agreement complies with the relevant provisions of the Workers' Compensation Act (Act).[1] (*Id.* F.F. ¶¶2-4, C.L. ¶2, Order, R.R. 14a-15a.) Pursuant to the C&R Agreement, Claimant and Employer agreed to settle the wage-loss portion of Claimant's case; Employer would continue to pay all reasonable and necessary medical expenses for the treatment of Claimant's work injury with Employer reserving its rights with respect to payment of Claimant's causally related medical expenses. (C&R Agreement ¶¶10, 13, 14, 19, R.R. 19a-20a, 22a.) The C&R Agreement described Claimant's injury as follows:

> **Neck Injury**. This Agreement resolves any and all claims for the injury described herein as well as for injuries known or unknown that Claimant sustained or may have sustained while employed by Super Fresh Food Markets and/or The Great Atlantic & Pacific Tea Company. This Agreement resolves all claims of any nature arising from the injuries described herein whether being paid by prior acceptance/adjudication or being claimed as due and...owing under the PA WC Act. Claimant affirms that no other injuries/diseases were sustained while employed by Employer set forth above. **Claimant's injury includes a back injury**.

(*Id.* ¶4, R.R. 18a, 22a (emphasis added).)

The termination petition that gives rise to this appeal was filed on November 6, 2013 and was assigned to WCJ San Angelo. In support of the termination petition, Employer relied on the testimony of Christian Fras, M.D.,

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.1, 2501–2708.

3

who is board certified in orthopedic surgery and who examined Claimant on August 26, 2013. (Exhibit D-1, Fras Dep. at 7, 10.) Dr. Fras opined that Claimant had fully recovered from his 1985 work-related neck injury, his ongoing subjective complaints were not related to that injury, he was capable of returning to full, unrestricted work and he required no further medical treatment to his neck. (*Id*. at 21-23.) Claimant testified before the WCJ at a hearing and submitted reports from Dr. Ferrara and John De Carlo, M.D., another of his treating physicians. Claimant also sought an award of unreasonable contest attorneys' fees on the grounds that Dr. Fras did not opine that Claimant had fully recovered from a lower back injury.

In a May 7, 2015 opinion, WCJ San Angelo denied the termination petition, finding Claimant's testimony to be credible and rejecting the testimony of Dr. Fras to the extent it conflicted with the medical evidence submitted by Claimant. (5/7/15 WCJ Decision F.F. ¶9, C.L. ¶2.) In addition, WCJ San Angelo rejected Claimant's argument that Employer's contest was unreasonable and therefore declined to award attorneys' fees to Claimant. (*Id.* C.L. ¶4.) In arriving at the conclusion that Employer's contest was reasonable, WCJ San Angelo entered Finding of Fact No. 10, which reads as follows:

> Claimant argues that Employer's contest was not reasonable because Dr. Fras did not render an opinion that Claimant fully recovered from his low back injury. This Judge notes that the accepted injury on the NCP is a neck injury. Claimant argues that WCJ Harris found Dr. Ferrara credible that Claimant had multiple surgeries in his neck and that Claimant has had back and neck pain since his injury. **The Judge notes that there was no specific finding, conclusion or order by WCJ Harris that amended the description of injury to include the low back.** Judge Harris' decision that Claimant could not perform the proffered jobs was based on the testimony of Dr. Ferrara with respect to Claimant's

4

restrictions pertaining to his neck only. Claimant also argues that in #4 of the Compromise and Release Agreement, the injury is described as a neck injury and it further states that the Agreement resolved all injuries whether known or unknown while Claimant was employed with Employer and that Claimant's injury includes a back injury. **This Judge finds that the Compromise and Release Agreement is not an adjudication of whether Claimant sustained a back injury and does not sua sponte amend the description of injury.** In addition, while Dr. Fras did not render an opinion that Claimant sustained a work related low back injury, he did examine the low back and opined that the examination findings were normal. Accordingly, Employer's contest to the Termination Petition was reasonable.

(*Id*. F.F. ¶10 (emphasis added).)

Claimant appealed to the Board, and in a February 23, 2016 opinion, the Board affirmed, finding no error in WCJ San Angelo's finding that the only accepted work injury was a neck injury and her conclusion that Employer presented a reasonable contest in the termination petition. Claimant thereafter petitioned this Court for review of the Board's decision.[2] After the appeal was filed, counsel for Employer withdrew his appearance and the Self-Insurance Guaranty Fund (Fund) filed an application in which it averred that Employer had ceased business operations. The Fund requested in its application that this Court substitute the Fund for Employer and amend the caption to reflect that the Fund

---

[2] This Court's review of an appeal from a determination by the Board is limited to determining whether an error of law was committed, whether the WCJ's necessary findings of fact are supported by substantial evidence and whether Board procedures or constitutional rights were violated. *Gahring v. Workers' Compensation Appeal Board (R and R Builders)*, 128 A.3d 375, 379 n.6 (Pa. Cmwlth. 2015).

was assuming Employer's obligations to Claimant under the Act. By a May 19, 2016 order, this Court entered an order granting the relief requested by the Fund.

On appeal to this Court, Claimant argues that Finding of Fact No. 10, which supported WCJ San Angelo's conclusion that the termination petition was a reasonable contest, is in error to the extent it states that Claimant's work injury was confined to the original description in the NCP as a neck injury and had not been amended to include a back injury. Upon review, we agree with Claimant that a portion of Finding of Fact No. 10 was contrary to law.

Claimant's first ground for arguing that his work injury was amended to include a back injury focuses on the 2003 decision by WCJ Harris denying Employer's modification petition. Claimant contends that WCJ Harris implicitly amended the work injury to include a lower back injury in the 2003 decision by accepting as credible Dr. Ferrara's opinion that Claimant suffered from lower back pain as a result of the 1985 work injury. In support of this argument, Claimant cites *Westmoreland County v. Workers' Compensation Appeal Board (Fuller)*, 942 A.2d 213 (Pa. Cmwlth. 2008), wherein this Court held that a WCJ may implicitly amend the description on an injury on an NCP without following the procedure for amendments set forth in Section 413(a) of the Act.[3] In *Westmoreland County*, the

---

[3] *As amended*, 77 P.S. §§ 771, 772, 773. Section 413(a) permits amendment in two ways. First, a claimant who seeks to add benefits for a condition that is related to, but distinct from a recognized injury on an NCP or supplemental agreement, may file a modification or review petition to add such "consequential conditions," and that petition is treated as if it were an original claim petition. 77 P.S. §§ 772, 773; *Cinram Manufacturing, Inc. v. Workers' Compensation Appeal Board (Hill)*, 975 A.2d 577, 580-81 (Pa. 2009); *Westmoreland County*, 942 A.2d at 217. Second, a WCJ may amend an NCP or a supplemental agreement on any petition, regardless of whether the claimant filed a petition seeking the expansion of the injury, if the NCP or agreement "was in any material respect incorrect." 77 P.S. § 771; *Cinram Manufacturing*, 975 A.2d at 580-81; *Westmoreland County*, 942 A.2d at 217. Such corrective **(Footnote continued on next page…)**

6

employer accepted the injury as a lumbar strain, and then later filed a termination petition; in denying the termination petition, the WCJ found credible the claimant's doctor's diagnosis of a herniated L4-5 disc and post-traumatic lumbar radiculopathy at the L5 level. 942 A.2d at 214-15. The employer filed a second termination petition several years later and this petition was also denied, in part because the employer's expert did not opine that the claimant had recovered from the herniated disc and lumbar radiculopathy injuries. *Id*. at 215-16. On appeal, this Court affirmed, holding that the WCJ's denial of the first termination petition based on a diagnosis of a herniated disc and lumbar radiculopathy acted to implicitly amend the NCP to include those injuries. *Id*. at 218.

In this matter, WCJ Harris noted in the 2003 decision that Dr. Ferrara, Claimant's treating neurosurgeon, testified that "Claimant still continues to complain of low back and leg pain, which he has had since the work injury of 1985." (3/27/03 WCJ Decision F.F. ¶5, R.R. 7a.) WCJ Harris next recounted that "Dr. Ferrara opined that these conditions…are related to the work injury of 1985." (*Id*. ¶5, R.R. 8a.) While this testimony indicates that Dr. Ferrara believed there was some link between Claimant's back pain and his neck injury, this connection is tenuous and lacks indicia that WCJ Harris actually intended to expand the description of Claimant's work injury as occurred in *Westmoreland County*. WCJ Harris did not specifically state that Dr. Ferrara diagnosed Claimant with a back condition in addition to the original diagnosis of a C6-7 cervical syndrome. (*Id*. ¶5, R.R. 7a.) Furthermore, although WCJ Harris found Dr. Ferrara to be more

---

**(continued…)**

amendments, however, by a WCJ is limited to injuries that existed at the time the NCP or agreement was issued. *Westmoreland County*, 942 A.2d at 217.

credible and persuasive than Employer's expert, WCJ Harris did not specifically credit Dr. Ferrara's testimony regarding Claimant's back or leg pain and instead only referenced Claimant's neck condition as a reason he was not able to perform the duties of the offered positions. (*Id*. ¶6, R.R. 9a.) Accordingly, because WCJ Harris did not make a definitive finding of a work-related back injury or specifically credit testimony of a diagnosis, WCJ San Angelo did not err in finding that WCJ Harris did not amend the description of injury

Claimant next argues that the description of his work injury was expanded by the C&R Agreement between Claimant and Employer, which was approved by WCJ San Angelo in a December 20, 2013 decision. In the C&R Agreement, Employer and Claimant agreed to settle Claimant's claim for wage-loss benefits for any injuries "known and unknown" in exchange for payment of a lump sum. (C&R Agreement ¶¶4, 10, R.R. 18a-19a.) While the parties settled Claimant's wage-loss benefits, Employer agreed to continue to "pay for reasonable and necessary medical treatment for the injury described in paragraph 4." (*Id.* ¶10, R.R. 19a.) Paragraph four of the agreement describes Claimant's work injury as a "[n]eck injury," and states that this "injury includes a back injury." (*Id*. ¶4, R.R. 18a, 22a.)

Pursuant to Section 449 of the Act,[4] the parties to a workers' compensation case may resolve "any and all liability" under the Act through a C&R Agreement. 77 P.S. § 1000.5(a), (b). The agreement must specify various items of information regarding the case, including "the injury, the nature of the injury and the nature of the disability, whether total or partial," and must be

---

[4] Added by the Act of June 24, 1996, P.L. 350, 77 P.S. § 1000.5.

8

considered in an open hearing where the WCJ will determine whether "the claimant understands the full legal significance of the agreement." 77 P.S. § 1000.5(b), (c)(3). By enacting Section 449, the General Assembly intended for C&R Agreements to be "on equal footing with civil settlements" and to foster the public policy of encouraging settlements of claims under the Act and promote finality. *DePue v. Workers' Compensation Appeal Board (N. Paone Construction, Inc.)*, 61 A.3d 1062, 1067 (Pa. Cmwlth. 2013) (quoting *Stroehmann Bakeries, Inc. v. Workers' Compensation Appeal Board (Plouse),* 768 A.2d 1193, 1196 (Pa. Cmwlth. 2001)). Once approved, a C&R Agreement is final, conclusive and binding on the parties and cannot be set aside absent a clear showing of fraud, deception, duress, mutual mistake or unilateral mistake caused by an opposing party's fault. *DePue*, 61 A.3d at 1067; *Farner v. Workers' Compensation Appeal Board (Rockwell International)*, 869 A.2d 1075, 1078 (Pa. Cmwlth. 2005). Any issue that was not raised in a C&R Agreement may not be raised subsequent to the agreement's approval. *DePue*, 61 A.3d at 1067.

In Finding of Fact No. 10 of her decision denying the termination petition, WCJ San Angelo determined that the C&R Agreement was not an adjudication and therefore could not amend the description of the injury in the NCP. (5/7/15 WCJ Decision F.F. ¶10.) This finding, however, is contrary to our decision in *DePue*, in which we held that the description of an injury in a C&R Agreement is binding against a claimant in later proceedings. In *DePue*, the employer issued an NCP for a closed head injury, and the parties later entered into a C&R Agreement that listed the injuries as "any and all injuries suffered at [the employer], including but not limited to the accepted injuries of a severe closed head injury with seizure disorder and short term memory loss." 61 A.3d at 1064

9

(emphasis omitted). Two years after the C&R Agreement was approved, the claimant filed penalty and review petitions alleging that the description of his work injuries was incorrect and should include a left shoulder injury, citing the fact that the employer had routinely paid for medical bills related to treatment of the left shoulder. *Id*. at 1064-65. The WCJ dismissed the claimant's petitions based on the doctrine of *res judicata*. *Id*. This Court affirmed the WCJ, holding that once approved, a C&R Agreement "was final and binding on the parties and may not be amended after its unappealed approval." *Id*. at 1067. Therefore, in spite of the fact that the employer had voluntarily paid medical bills related to the left shoulder injury, the claimant's failure to expressly reserve his right to add a new injury to the description meant he was precluded from attempting to amend the description of the work injury to include reference to the left shoulder injury. *Id*. at 1067-69.

In this case, as in *DePue*, the parties agreed to settle Claimant's wage-loss benefits and drafted a C&R Agreement to that effect, with Employer retaining the responsibility to pay for medical expenses for the injury described in the C&R Agreement. The C&R Agreement was approved by WCJ San Angelo and there was nothing in that agreement that would allow for amendment of the description of the work injury to remove or add any conditions. Under our holding in *DePue*, Claimant would be bound by the description of the injury in the C&R Agreement and precluded from filing a petition to expand the description of his injury. We see no reason that the description of the injury would also not be binding on Employer under *DePue* in any future proceedings related to Claimant's workers' compensation claims. Indeed to enforce the description of the injury in an approved C&R Agreement as binding against a claimant but not against an employer would be inequitable and contrary to the liberal construction of the Act

10

in favor of the injured employee in order to effectuate the Act's remedial and humanitarian purpose.

Therefore, WCJ San Angelo's statement in Finding of Fact No. 10 in the May 7, 2015 decision denying Employer's termination petition that the injury was not amended by the C&R Agreement was in error. This error, however, does not constitute grounds for reversal of WCJ San Angelo's denial of Claimant's request for unreasonable contest attorneys' fees. The Fund, which appeared in this action as the successor to Employer and guarantor of its obligations under the Act, was created by the General Assembly in 2000 in order to make payments to any claimant upon the default of a self-insured employer liable to pay benefits under the Act. Section 903 of the Act, added by the act of June 22, 2000, P.L. 390, 77 P.S. § 1037.3. When the Fund was created, a "Prefund Account" was established within the Fund to pay benefits where there is a default by a self-insurer and the NCP, claim petition or agreement was filed prior to January 1, 1997. Section 909(c)(1) of the Act, added by the act of June 22, 2000, P.L. 390, *as amended*, 77 P.S. § 1037.9 (c)(1). The NCP in this matter was issued on January 7, 1986 and therefore payments from the Fund to Claimant will be made from the Prefund Account. The Prefund Account prohibits "payments from the account [to be] used to pay interest, penalties or attorney fees related to the payment of benefits." 77 P.S. § 1037.9 (c)(2). Thus, even if WCJ San Angelo erred in concluding that the contest by Employer was reasonable, we cannot reverse and order the Fund to pay Claimant attorneys' fees, an act it may not perform under the laws of this Commonwealth. *See Will v. Department of Transportation, Bureau of Driver Licensing*, 641 A.2d 624, 626 n.2 (Pa. Cmwlth. 1994) (observing that this Court may not grant a remedy not authorized by law).

11

Accordingly, the order of the Board is affirmed.

_____
JAMES GARDNER COLINS, Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephen Gregorski,                                    :
                                                      :
                              Petitioner              :
                                                      :
               v.                                     : No. 370 C.D. 2016
                                                      :
Workers' Compensation Appeal                          :
Board (Self-Insurance Guaranty                        :
Fund as Successor to The Great                        :
Atlantic and Pacific Tea Company),                    :
                                                      :
                              Respondent              :

# **O R D E R**

AND NOW, this 5th day of January, 2017, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.

_____
JAMES GARDNER COLINS, Senior Judge